[No. E001021. Fourth Dist., Div. Two. Feb. 25, 1986.]

EWAP, INC., Plaintiff and Appellant, v.
CITY OF ONTARIO, Defendant and Appellant.

## Counsel

Brown, Weston & Sarno, David M. Brown, Robert Sarno, G. Randall Garrou, Robert DePiano and Richard G. N. Weston for Plaintiff and Appellant.

Covington & Crowe, Robert E. Dougherty and Gerald R. Gatlin for Defendant and Appellant.

## Opinion

**MORRIS, P. J.**—Plaintiff appeals from that portion of a summary judgment denying it attorney fees. Defendant cross-appeals contesting the judgment. For the reasons hereinafter stated, we reverse the judgment as to attorney fees, and remand.

### Facts

Plaintiff EWAP, Inc. owns and operates an "adult" bookstore in the City of Ontario. The business sells various printed and cinematic materials and also exhibits films to individual customers. The store also sells items referred to as "sexual novelties."

In April 1977, the City of Ontario, defendant herein, adopted amendments to its municipal code. These amendments imposed two new requirements on "adult" businesses. First, they established zoning restrictions which prohibited adult businesses from operating in any zone classified as other than C3, or from 1,000 feet of other adult businesses or other specified zones. (Ontario Municipal Code [hereinafter O.M.C.] §§ 9-3.1205, 9-3.1210(d).) Second, the amendments also required that within five years time, i.e., by April 1982, all preexisting adult businesses obtain a conditional use permit in order to operate lawfully.

The new amendments further dictated that all preexisting adult businesses must cease operation on July 7, 1982, thus creating an amortization period of slightly more than five years. An extension of this period could be granted on the basis of financial hardship.

On February 12, 1982, defendant's building official, Byron Ely, sent a letter on defendant's letterhead apprising plaintiff of the consequences of the ordinance. The letter stated "You are, therefore, hereby notified that your said adult business . . . shall cease on or before July 7, 1982. Further, that unless the City Council has given an extension, the said activity after said date will be in violation of this said Chapter 3 of the Ontario Municipal Code. Such violation will be cause for this office to direct the City Attorney to take appropriate legal action to bring about compliance."[1] The letter concluded with an invitation to make contact with its author regarding "problems."

In May 1982, plaintiff filed the instant complaint. Plaintiff alleged that it was a preexisting adult business which had become nonconforming by virtue

---

[1]The ordinance penalized a zoning violation as a misdemeanor and as a civil nuisance.

of the zoning provisions. Plaintiff alleged that the zoning and conditional use permit requirements constituted unconstitutional deprivations of its First Amendment rights. The complaint sought an injunction to prevent enforcement of the ordinance against plaintiff, and also sought declaratory relief. Plaintiff's prayer expressly requested an award of attorneys' fees pursuant to the Civil Rights Attorney's Fee Awards Act of 1976 (42 U.S.C. § 1988, hereinafter simply section 1988).

Defendant filed a timely answer. Defendant affirmatively alleged that after July 7, 1982, plaintiff's nonconforming use would become unlawful. It further alleged "that appropriate action after July 7, 1982, would include criminal prosecution and/or civil abatement action, and that such actions may be taken."

Defendant and plaintiff subsequently engaged in discovery and considered the necessity of a pretrial restraining order. When made aware of relevant case law, counsel for defendant concluded that the conditional use permit requirement was unconstitutional and unenforceable. Although defendant's counsel asserted the constitutionality of the zoning requirements, counsel agreed not to enforce either the zoning or permit requirements pending trial.

The parties were unable to reach a pretrial settlement. Defendant offered an acknowledgment that the zoning ordinance was unconstitutional as applied, but argued that there had been no threat of a deprivation of constitutional rights justifying relief under 42 United States Code, section 1983 (hereinafter section 1983).[2] Defendant consistently refused settlement offers which included an award of attorneys' fees.

Next, plaintiff moved for summary judgment. Defendant's opposition was solely on the assertion that plaintiff had not been deprived of its constitutional rights.

The court filed its judgment on February 29, 1984. As prayed for in the complaint, the judgment declared the ordinance unconstitutional as applied to plaintiff, and granted a permanent injunction. The judgment specifically denied plaintiff's request for attorneys' fees.

Thereafter, plaintiff moved to vacate the judgment as it pertained to the fees. The motion requested specific findings as to (1) whether plaintiff was a "prevailing party" within the meaning of section 1988, and (2) whether there existed "special circumstances" which justified the denial of an award of attorneys' fees.

---

[2]Defendant reiterates this argument on its cross-appeal. See *infra*.

The court entered an order denying the motion. Specifically, the court found "that plaintiff is not a prevailing party within the meaning of 42 U.S.C. Section 1988." The court stated its reason for this finding as follows:

"The litigation herein was unnecessary because there was no violation of civil rights. The same results would have been obtained without filing suit, in that defendant city agreed not to enforce Ontario Municipal Code Section 9-3.1205(b), 9-3.1210(d) and 9-3.3235(c) as applied to plaintiff's adult bookstore and adult mini-motion picture threatre."

Plaintiff appeals. Defendant cross-appeals alleging a special circumstance justifying the denial.

## DISCUSSION

### I. *Procedure*

At the outset we observe the procedural posture of this case. Plaintiff claimed relief under 42 United States Code, section 1983, which provides civil remedies against "[e]very person, who under color of any statute" subjects any citizen to a deprivation of his or her rights under the United States Constitution. The parties now contest the trial court's application of a related statute, section 1988. That section, also known as the Civil Rights Attorney's Fees Awards Act of 1976, in relevant part, provides:

"In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (Section 1988.)

 State courts possess jurisdiction concurrent with federal courts to hear claims under section 1983. (*Martinez* v. *California* (1980) 444 U.S. 277, [62 L.Ed.2d 481, 100 S.Ct. 553]; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125].) The same concurrent jurisdiction obtains for subsequent attorney fee petitions under section 1988. (*Maine* v. *Thiboutot* (1980) 448 U.S. 1, 10-11 [65 L.Ed.2d 555, 563-564, 100 S.Ct. 2502, 2507-2508] ["the fee provision is part of the § 1983 remedy whether the action is brought in federal or state court." (Fn. omitted)]; *Filipino Accountants' Assn.* v. *State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1031 [204 Cal.Rptr. 913]; cf. *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 638-639, fn. 27 [186 Cal.Rptr. 754, 652 P.2d 985].)

We also carefully observe the standard of review applicable in this matter. Fee denials under section 1988 are reviewed under an abuse of discretion standard. (*Ackerley Communications* v. *City of Salem, Or.* (9th Cir. 1985) 752 F.2d 1394, 1396; *Sethy* v. *Alameda Cty. Water Dist.* (9th Cir. 1979) 602 F.2d 894, 897; *Kreutzer* v. *County of San Diego* (1984) 153 Cal.App.3d 62, 75 [200 Cal.Rptr. 322].)

Further, it is now well-settled law that section 1988 mandates an award of attorneys' fees to the party prevailing in a section 1983 case. The exception to this rule applies to cases presenting "special circumstances."

Regarding section 1988, the Supreme Court of the United States has stated this rule as follows:

"[A] prevailing plaintiff ' "should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." ' " (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 429 [76 L.Ed.2d 40, 48, 103 S.Ct. 1933, 1937] quoting Sen. Rep. No. 94-1011 (1976) p. 4, 1976 U.S. Code Cong. & Admin. News, p. 5912 (quoting *Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1265, 88 S.Ct. 964, 966].)

Lower federal courts follow this rule and emphasize the trial court's limited discretion. (See, e.g., *Ackerly Communications* v. *City of Salem, Or.,* *supra,* 752 F.2d 1394; *Universal Amusement Co., Inc.* v. *Hofheinz* (5th Cir. 1980) 616 F.2d 202, 204-205 ["Although an award of attorney's fees pursuant to § 1988 is within the discretion of the District Court, this award should ordinarily be made in the absence of special circumstances which would render such an award unjust."].)

The principle followed by the courts of this state is the same. Our Supreme Court equates section 1988 to its state law analogue (Code Civ. Proc., § 1021.5) and follows the federal rules regarding fee awards. (*Serrano* v. *Unruh, supra,* 32 Cal.3d 621, 638-639 and fns. 27-29; *Coalition for Economic Survival* v. *Deukmejian* (1985) 171 Cal.App.3d 954, 960-961 [217 Cal.Rptr. 621]; *Green* v. *Obledo* (1984) 161 Cal.App.3d 678, 683 [207 Cal.Rptr. 830].)

II. *Prevailing Party*

The trial court concluded that plaintiff was not a "prevailing party" within the meaning of section 1988. However, on plaintiff's motion for summary judgment, the court awarded plaintiff the injunctive and declaratory relief prayed for in the complaint. Thus, the court must have conclud-

ed, as defendant now urges on appeal, that a plaintiff cannot be held to prevail on issues which a defendant concedes.

This position is untenable. The Supreme Court of the United States has held that the standard for an award under section 1988 "is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" (*Hensley* v. *Eckerhart, supra,* 461 U.S. 424, 433 [76 L.Ed.2d 40, 50, 103 S.Ct. 1933, 1939] quoting *Nadeau* v. *Helgemoe* (1st Cir. 1978) 581 F.2d 275, 278-279, fn. omitted.) The court observed that this standard is a "generous formulation." (*Id.*)

This standard has been consistently applied to award fees to plaintiffs who have prevailed on only a portion of their civil rights claims. Indeed, the United States Supreme Court has held that a plaintiff need not obtain an adversary judgment in order to qualify as "prevailing." (See *id.; Maher* v. *Gagne* (1980) 448 U.S. 122, 129 [65 L.Ed.2d 653, 661, 100 S.Ct. 2570, 2575] [settlement favorable to plaintiff]; *Martin* v. *Heckler* (11th Cir. 1985) 773 F.2d 1145, 1148-1149 [complaint mooted by defendant's remedial action subsequent to lawsuit]; *Lummi Indian Tribe* v. *Oltman* (9th Cir. 1983) 720 F.2d 1124, 1125-1126 [settlement benefiting plaintiff]; *White* v. *City of Richmond* (9th Cir. 1983) 713 F.2d 458, 460 [consent decree]; *Charles* v. *Coleman* (8th Cir. 1982) 689 F.2d 774 [consent decree].)

Plaintiff obtained the essential declaratory and injunctive relief sought in its complaint. It is therefore the prevailing party. The trial court's finding to the contrary is unsupported by the record.

Defendant argues that its postanswer concessions render plaintiff's success "marginal." This argument ignores the fact that it was plaintiff's prosecution of its suit which pressed defendant into those concessions.

Defendant argues in favor of the court's finding by citation to *Greenside* v. *Ariyoshi* (D.Hawaii 1981) 526 F.Supp. 1194. However, there the court clearly stated: "Plaintiff has obtained the relief sought and, therefore, is undoubtedly the prevailing party." (*Id.,* at p. 1196.) In contrast to the case at bench, the court there based its denial of attorney's fees on a finding of a special circumstance. (*Ibid.*)

California case law further undercuts defendant's contended definition of a "prevailing party." In *Filipino Accountants' Assn.* v. *State Bd. of Accountancy, supra,* 155 Cal.App.3d 1023, defendants at first resisted plaintiffs' claims of unlawful racial discrimination, but later entered into a stipulated judgment. On appeal defendants argued that plaintiffs could not prop-

erly be considered "prevailing parties" in light of the consensual nature of a stipulated judgment. (*Id.*, at p. 1031.)

The court rejected this argument. It held that "[t]here is no question but that petitioners 'prevailed' in the instant litigation in which they 'acquired the primary relief sought.'" (*Id.*, quoting *Taylor* v. *Sterrett* (5th Cir. 1981) 640 F.2d 663, 669.) In the case at bench, plaintiff also has acquired its essential relief. (See also *Coalition for Economic Survival* v. *Deukmejian, supra,* 171 Cal.App.3d 954, 961 ["a plaintiff should also be said to be a prevailing party when a court decision is made which has the practical *effect* of giving the plaintiff a substantial amount of the relief sought . . . ."]; accord, *Kreutzer* v. *County of San Diego, supra,* 153 Cal.App.3d 62, 73 ["The fact a plaintiff prevailed through a settlement rather than through litigation does not weaken his or her claim to fees . . . ."].)

In light of these authorities, the trial court's finding that plaintiff is not a "prevailing party" cannot stand.

## III. *The Cross-appeal and Special Circumstances*

The trial court stated in its order denying the motion to vacate judgment that "there was no violation of civil rights. The same results would have been obtained without filing suit . . . ." In its cross appeal, defendant contends that this statement constitutes a finding of a special circumstance sufficient to justify the denial of attorney fees.

However, the chronology of this case cannot support the trial court's reasoning that because defendant agreed not to enforce the ordinances, the same results would have been obtained without filing suit. Defendant conceded the unconstitutionality of the ordinances at a very late stage in the lawsuit, i.e., only in discovery and at the motion for summary judgment. Prior to these stages, defendant on two occasions unmistakably asserted its intent to enforce the ordinances. Specifically, the letter from Mr. Ely unequivocally stated that plaintiff's operation after July 7, 1982, without approval from defendant's city council would be in violation of defendant's ordinances, and that defendant's city attorney would take "appropriate legal action to bring about compliance."

In addition, defendant's answer stated "Defendants admit that appropriate action after July 7, 1982, would include criminal prosecution and/or civil abatement action, *and that such actions may be taken.*" (Italics added.)

The instant judgment permanently enjoined the enforcement of the ordinances under consideration. The judgment included an express declaration

of unconstitutionality of the challenged laws as applied to plaintiff's bookstore and motion picture businesses. Defendant made no motion contesting the validity of this order.

Defendant's agreement not to enforce the ordinance came *after* its assertion in its pleadings that it might do so. It reached its conclusion that the ordinances were unenforceable only as a direct result of research for this litigation. Thus, we must disregard the trial court's statement that the same results would have occurred without filing suit.

Defendant also urges us to conclude that plaintiff is ineligible for an award under section 1988 because it has failed to prove the underlying violation of its civil rights. (42 U.S.C. § 1983.)

The record and our research compel the contrary conclusion. Defendant's theory is that inasmuch as plaintiff never alleged a curtailment or disruption of its business, its civil rights were not abridged.

Nevertheless, it is easily determined that the threatened enforcement of unconstitutional laws gives rise to a cause of action under section 1983. In *Brockett* v. *Spokane Arcades, Inc.* (1985) 472 U.S. — [86 L.Ed.2d 394, 105 S.Ct. 2794], the court considered the constitutionality of a Washington state obscenity statute. Various "adult" businesses challenged the statute after its effective date before any attempted enforcement. Without comment the court upheld the issuance of a preliminary injunction which had stayed the enforcement of the ordinance during the pendency of the litigation. Plaintiffs obtained this relief merely on the basis of an allegation "that the state authorities would enforce the new legislation against them unless restrained . . . ." (472 U.S. at p. — [86 L.Ed.2d at p. 400, 105 S.Ct. at p. 2797].)

Similarly, *Vance* v. *Universal Amusement Co.* (1980) 445 U.S. 308 [63 L.Ed.2d 413, 100 S.Ct. 1156] examined a civil rights action filed under section 1983 by the owners of adult businesses. At issue was an obscenity and nuisance abatement statute. The only incident which gave rise to the suit was that a county attorney had notified a landlord of his *intent* to obtain an injunction under the statute (*id.,* at p. 309 [63 L.Ed.2d at p. 416]). Thus, the *per curiam* opinion rejected the contention of two dissenting justices that the controversy was insufficiently ripe for adjudication. (See *id.,* at pp. 317-318 [63 L.Ed.2d at p. 421]; accord, *Steffel* v. *Thompson* (1974) 415 U.S. 452, 459 [39 L.Ed.2d 505, 514-515, 94 S.Ct. 1209, 1216].)

Decisions from lower federal courts elucidate the principle that a nonspeculative threat of enforcement of an unconstitutional zoning law consti-

tutes a deprivation of civil rights sufficient to invoke section 1983. *Lydo Enterprises, Inc.* v. *City of Las Vegas* (9th Cir. 1984) 745 F.2d 1211, exemplifies this rule. In that case, plaintiff obtained a temporary restraining order prohibiting enforcement of a zoning ordinance restricting the location of "sexually oriented businesses." As in the instant case, the ordinance there had been enacted several years previously, and the defendant city gave notice that plaintiff's nonconforming use must cease or face civil and criminal sanctions within several months' time. (*Id.*, at p. 1212.) The court in *Lydo* was firmly of the opinion that plaintiff should have sought judicial relief soon after receiving the notice of nonconforming use. The appellate court reversed the preliminary injunction after observing that plaintiff had waited until 10 days before the date of threatened sanctions. (*Id.*, at pp. 1214, 1216.) The clear import of this ruling is that early judicial challenges to zoning ordinances are to be preferred.

Equally illustrative of the civil rights deprivation inherent in a threatened unconstitutional zoning enforcement is *Patel and Patel* v. *City of South San Francisco* (N.D.Cal. 1985) 606 F.Supp. 666. There the court declared unconstitutional a zoning ordinance which purported to regulate the location of an "adult motel." The court held that the action for affirmative relief under section 1983 became timely after the city attorney had written a letter stating his intent to enforce the ordinance. (*Id.*, at pp. 668, 669.) As in the case at bench, the threatened enforcement proceedings were never begun. (See *id.*, at p. 669; see also *Ebel* v. *City of Corona* (9th Cir. 1983) 698 F.2d 390, and (9th Cir. 1985) 767 F.2d 635 [permanent injunction prohibiting enforcement of adult zoning ordinance granted on complaint filed after service of notice to move].)

Defendant's focus on the absence of curtailment or disruption derives from its reading of *Reichenberger* v. *Pritchard* (7th Cir. 1981) 660 F.2d 280. There the United States Court of Appeals reviewed the sufficiency of a complaint brought under section 1983. The court stated "the complaint must allege an actual deprivation of rights resulting from the defendants' act. [Citations.] The mere possibility of remote or speculative future injury or invasion of rights will not suffice. [Citations.]" (*Id.*, at p. 285.)

This language is inapposite to the present case. The challenge to plaintiff's right to continue its business was not remote or speculative, but instead directly threatened.

As the foregoing authorities make evident, the nonspeculative threat under color of law of a deprivation of civil rights is itself an actionable right under section 1983. Defendant's focus on the fact that plaintiff's business was neither curtailed nor disrupted is specious. Its examination overlooks the

fact that plaintiff's business was not interrupted precisely because plaintiff filed the present lawsuit.

Defendant's reliance on *Greenside* v. *Ariyoshi, supra,* 526 F.Supp. 1194, is also misplaced. That case denied a section 1988 motion for attorneys' fees following a consent judgment entered on a section 1983 complaint. Plaintiff filed its complaint, against a recently enacted statute. Before filing, plaintiff's counsel discussed the constitutionality of the statute with the defendants and secured defendants' promise not to enforce the statute if review by the attorney general's office confirmed the statute's unconstitutionality. Defendants notified all concerned parties that the state did not intend to enforce the ordinance during the pendency of the court's review. (*Id.,* at p. 1196.)

Plaintiff in *Greenside* nevertheless filed its complaint. It was in this context that the court stated "no award of fees is required if the court determines that plaintiff's suit was completely superfluous to achieving the improvements undertaken by defendants on plaintiff's behalf." (*Id.,* at p. 1197.)

This language is inapplicable to the case at bench. Before the filing of a complaint in *Greenside* the defendants had agreed to suspend enforcement of the ordinance. In our case, defendant agreed to suspend enforcement only *after* the pleading stage and after it threatened enforcement.

We further note that we are unable to discern any other special circumstances rendering the award of attorneys' fees unjust. Defendant's contended circumstances of postfiling concessions would undercut the congressional goal of facilitating the vindication of legitimate civil rights complaints. (See *Hensley* v. *Eckerhart, supra,* 461 U.S. 424, 428-430 [76 L.Ed.2d 40, 47-48, 103 S.Ct. 1933, 1937].) ▮ A plaintiff's ability to pay his or her own attorney's fees is not a "special circumstance" within the meaning of section 1988. (*Schmid* v. *Lovett* (1984) 154 Cal.App.3d 466, 476, 479, fn. 12 [201 Cal.Rptr. 424].) ▮ Neither does defendant's good faith belief in the constitutionality of the ordinance nor does the fact that the award must be paid from limited taxpayer funds constitute a special circumstance. (*Id.,* at pp. 475-477, but cf. *Kreutzer* v. *County of San Diego, supra,* 153 Cal.App.3d 62, 76-77 [fee under section 1988 denied for reasons above and because settlement did not contemplate fee award].)

Because we conclude that plaintiff was entitled to an award of attorneys' fees in the suit below, it follows that plaintiff is also entitled to the fees attendant on the prosecution of this appeal. (See *Serrano* v. *Unruh, supra,* 32 Cal.3d at p. 639.) We decline plaintiff's request for sanctions. However,

we note that the award will have grown from defendant's liability at trial only because of defendant's unwillingness to pay at an earlier stage.

On remand we direct the superior court to award only those fees for work determined necessary, and to compensate at a rate deemed reasonable. (See, e.g., *Margolin* v. *Regional Planning Com.* (1982) 134 Cal.App.3d 999, 1004-1005 [185 Cal.Rptr. 145], and cases there cited.)

### DISPOSITION

The judgment denying plaintiff attorneys' fees is reversed. The matter is remanded to the superior court for determination of the amount of the fee award both in the action below and on appeal.

Kaufman, J., and Rickles, J., concurred.

A petition for a rehearing was denied March 14, 1986.